United States District Court
Southern District of Texas
**ENTERED**
September 07, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROLANDO ANDRES GARCIA-MUNIZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-79 |
| | § | |
| MUSQUIZ C., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Rolando Andres Garcia-Muniz is a federal prisoner appearing *pro se* and *in forma pauperis*. Plaintiff, who is currently incarcerated at the Federal Correctional Institution, Three Rivers (FCI-Three Rivers) in Three Rivers, Texas, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, the undersigned recommends that: (1) Plaintiff's claims against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claims against all Defendants in their individual capacities be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below; (3) Plaintiff's Motions for Temporary Restraining Order (TRO) or Injunction (D.E. 6, 12) be **DENIED**;

and (4) the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.      PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff, a citizen of Mexico, pled guilty in 2014 to illegal reentry into the United States.  (*United States v. Garcia-Muniz*, Criminal No. 7:14-cr-710-1 (S.D. Tex. 2014)). On October 17, 2014, United States District Judge Randy Crane sentenced Plaintiff to forty-six (46) months in prison.  (*Id.*, D.E. 24).

Plaintiff filed his original complaint on February 27, 2017, naming Counselor Musquiz, a correctional officer and unit counselor, as the sole defendant.   Plaintiff primarily claims that Counselor Musquiz retaliated against Plaintiff after Plaintiff had filed administrative grievances against Counselor Musquiz.   Plaintiff seeks injunctive relief against Counselor Musquiz in the form of stopping his retaliatory acts and expunging all of the disciplinary reports issued against Plaintiff.[2]

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).

[2] Plaintiff also seeks criminal penalties against Counselor Musquiz under the Texas Penal Code.  To the extent he believes Counselor Musquiz's conduct violates state law, he should contact the District Attorney for the county in which FCI-Three Rivers is located.  This Court has no authority to bring state law criminal charges against Counselor Musquiz.  Plaintiff also improperly seeks to bring this lawsuit on behalf of other inmates.

A *Spears*[3] hearing was held on May 12, 2017, where Plaintiff was given an opportunity to explain his claims.  Plaintiff subsequently filed a Motion to Supplement Complaint (D.E. 19) and Motion to Amend the Original Complaint (D.E. 20).  On July 18, 2017, the undersigned granted these motions and directed the Clerk of the Court to docket Plaintiff's supplemental pleading and exhibits as well as add the parties listed in Plaintiff's motion to amend as defendants in this case.  (D.E. 21).  Specifically, the following FCI-Three Rivers officials were added: (1) R. Hanson, Warden; (2) Mr. Molina, Karnes B Unit Manager; (3) Mrs. Swiatek, Karnes B Unit Case Manager; (4) Ms. Guinn, Lieutenant; (5) Mr. Hubbard, Case Manager Coordinator; (6) Mr. Thomas, the warden's Executive Assistant; and (7) Ms. Mendoza, Associate Warden.  The undersigned further directed Plaintiff to file a more definite statement to allow the Court to properly evaluate the merits of the allegations against the seven new defendants.  (D.E. 21, p. 3).

On August 11, 2017, Plaintiff filed his More Definite Statement (D.E. 23) as well as a Motion to Add Additional Parties to this case (D.E. 24).  In a separate order entered on this day, the undersigned granted Plaintiff's motion and added the following four FCI-Three Rivers officials: (1) J. Olivares, Officer; (2) D. Bustillo, Officer; (3) M. Kyzar, Karnes B Unit Secretary; and (4) O. Morin, Karnes A Unit Counselor.

The following allegations were made in Plaintiff's original complaint (D.E. 1), his supplemental pleading (D.E. 22), his More Definite Statement (D.E. 23) or at the

---

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)*; see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

*Spears* hearing.  Plaintiff is scheduled for release from federal prison on October 22, 2017.  Plaintiff expects to be released at that time into the custody of immigration officials.  Plaintiff indicated that he will be in immigration custody while he challenges his removal to Mexico.[4]

Plaintiff arrived at FCI-Three Rivers on August 3, 2016.  On August 23, 2016, Counselor Musquiz initiated a disciplinary report against Plaintiff on the charge that Plaintiff used another inmate's pin number to place a phone call to Plaintiff's family.  Plaintiff complained to Lieutenant Guinn that Counselor Musquiz was being unfair in bringing this charge.  Plaintiff pled guilty to the charge and was sanctioned as follows: (1) loss of 21 days of good time credits; (2) loss of phone privileges for 60 or 90 days; and (3) loss of commissary for 60 days.  Plaintiff's administrative appeals challenging the disciplinary sanctions were denied.

Counselor Musquiz subsequently called Plaintiff into his office to inquire why Plaintiff was appealing the August 23, 2016, disciplinary sanctions.  Plaintiff alleges Counselor Musquiz ran Plaintiff out of his office while cursing and calling Plaintiff derogatory names.  According to Plaintiff, Counselor Musquiz ordered "coercive action" to be taken against Plaintiff and conspired with prison inmates against anyone who filed appeals from disciplinary reports.  (D.E. 1, p. 2).

---

[4] In the event Plaintiff is transferred to another prison facility while under immigration custody or otherwise removed to Mexico, he remains obligated to keep this Court updated as to his new address.  Failure to keep the Court apprised of his updated address may result in the dismissal of this action.

From August 23, 2016 until September 20, 2016, Counselor Musquiz brought three or four disciplinary cases against Plaintiff.[5]  In each of these disciplinary cases, Plaintiff was charged with using another inmate's phone minutes.  All of these cases were dismissed or expunged without Plaintiff receiving any punishment or other adverse action.

On September 20, 2016, Counselor Musquiz initiated a disciplinary incident report against Plaintiff on the charge of improperly possessing an ice cream cup in violation of the commissary restrictions imposed in connection with the August 23, 2016 sanctions. According to Plaintiff, another inmate gave him the ice cream cup.  In his Supplemental Pleading, Plaintiff states that no disciplinary code violation exists for giving things of value or for restricting an individual to possess or eat ice cream.  (D.E. 22, p. 2).  Rather, the Federal Bureau of Prisons (BOP) and the FCI-Three Rivers encourage inmates to share things of value.

According to Plaintiff, Lieutenant Guinn participated in the false "ice cream" incident report by serving the report on Plaintiff.  (D.E. 24-2, p. 2).  On September 21, 2016, at 11:18 a.m., Case Manager Swiatek and Unit Secretary Kyzar imposed "illegal" sanctions against Plaintiff in the form of 90 days loss of email privileges to begin on September 21, 2016.  (D.E. 24-2, p. 2).  Plaintiff complained to Warden Hanson about the ice cream incident report, and Warden Hanson told Plaintiff to file the appropriate appeals.

---

[5] At the *Spears* hearing, Plaintiff indicated that three disciplinary proceedings were brought against Plaintiff from August 23, 2016 until September 20, 2016.  However, in his More Definite Statement, Plaintiff states that Counselor Musquiz issued four incident reports against Plaintiff during this time period.  (D.E. 23, p. 2).

On September 21, 2016, after being sanctioned in the "ice cream" case, Plaintiff used a computer to email his family that he lost his email privileges.  Because he was able to sign on the computer, Plaintiff believed he could still use his private email until it was actually blocked.  At 4:18 p.m. on September 21, 2016, Officer Olivares issued an incident report against Plaintiff based on his allegation that he had observed Plaintiff on the computer at 3:00 p.m.  Officer Olivares's report charged Plaintiff with disobeying the order prohibiting Plaintiff from using his private e-mail.

Plaintiff believed that Officer Olivares was acting on behalf of Counselor Musquiz and/or Case Manager Swiatek and that their conduct was retaliatory because: (1) it is unusual for officers to monitor whether prisoners are allowed on the email system; and (2) inmates are still allowed to use the computer even if the email system is shut off.  On September 22, 2016, Unit Secretary Kyzar and Unit Counselor Morin imposed sanctions of 120 days loss of email privileges, 30 days loss of phone privileges, and 30 days loss of visitation.    (D.E. 24-4, p. 2).  Plaintiff's administrative appeal from this disciplinary sanction remains pending.

On September 22, 2016, Plaintiff discussed the "frivolous ice cream and email incident reports" with Karnes B Unit Manager Molina, who supervised Counselor Musquiz, Case Manager Swiatek, Unit Secretary Kyzar, and Unit Counselor Morin. (D.E. 23, p. 10).  Plaintiff alleges Unit Manager Molina failed to address the issues and informed Plaintiff to appeal the incident reports.  Plaintiff further alleges Unit Manager Molina also failed to respond to Plaintiff's informal administrative remedies.

On September 22 and 23, 2016, Plaintiff submitted two informal requests for administrative remedies in which he alleged retaliation by the Karnes B Unit staff.  Mr. Thomas, the warden's Executive Assistant, and Warden Hanson failed to respond or otherwise provide any relief to Plaintiff.  On November 6, 2016, Plaintiff spoke in the cafeteria with Warden Hanson about the misconduct of Counselor Musquiz.  Warden Hanson responded that he did not receive a complaint from Plaintiff about Counselor Musquiz and walked away.

On November 17, 2016, Plaintiff asked another inmate to call Plaintiff's wife. The phone number, however, appeared on the prison's restricted list.  A disciplinary incident report was filed against Plaintiff, citing Plaintiff's violation of the restrictions against phone privileges.  Plaintiff alleges the officer whose name appeared on the report told Plaintiff that he was not aware of the report.  Plaintiff believed that Counselor Musquiz was responsible for the filing of this incident report.  Plaintiff was brought to Lieutenant Guinn's office where Plaintiff denied the allegations in the report. Nevertheless, Plaintiff received sanctions in this case in that additional days were added to his loss of privileges.  Plaintiff's administrative appeal from this disciplinary sanction remains pending.

On December 19, 2016, a disciplinary incident report was filed against Plaintiff, charging Plaintiff with violating his restrictions against phone privileges by again asking another inmate to relay a message to Plaintiff's wife.  (D.E. 24-2, p. 6).  Plaintiff believes that the act of asking another inmate to relay a message is not a violation of prison policy. At the *Spears* hearing, Plaintiff testified that another officer signed this report.  However,

the incident report dated December 19, 2016 lists Counselor Musquiz as the reporting officer.   (D.E. 24-6, p. 2).   Lieutenant Guinn participated in this incident report by serving it on Plaintiff.  (D.E. 24-2, p. 6).

According to Plaintiff's testimony at the *Spears* hearing, the disciplinary incident report issued on December 19, 2016 was dismissed with Plaintiff receiving no sanctions. However, both Plaintiff's More Definite Statement and the incident report reflect that, on December 20, 2016, Unit Secretary Kyzar initially recommended sanctions of 240 days loss of email privileges and 90 days loss of visitation but that the Disciplinary Hearing Officer decided to decline these recommendations.   (D.E. 23, p. 8; D.E. 24-6, p. 2). Plaintiff testified that he visited Counselor Musquiz's office a week later to tell Counselor Musquiz that the December 19, 2016 case was dismissed.  Counselor Musquiz expressed his anger toward Plaintiff for talking to Lieutenant Guinn and other officers about Counselor Musquiz's actions.

Rather than be dismissed, the December 19, 2016 incident report was reconsidered by the disciplinary committee.  (D.E. 23, p. 8, D.E. 24-6, p. 3).  On December 30, 2016, Unit Secretary Kyzar and Case Manager Swiatek imposed sanctions against Plaintiff consisting of an additional 180 days loss of email privileges and 60 days loss of visitation.   Plaintiff's administrative appeal from this disciplinary sanction remains pending.

On January 6, 2017, Plaintiff again spoke with Unit Manager Molina about the December 19, 2016 incident report and retaliatory acts committed by Counselor Musquiz and other members of the Karnes B Unit team.  According to Plaintiff, Unit Manager

Molina informed Plaintiff that Counselor Musquiz was doing his job and that Unit Manager Molina "could care less about [Plaintiff's] issues." (D.E. 23, p. 11).

Plaintiff states that Officer Bustillo issued an incident report on behalf of Counselor Musquiz, charging Plaintiff with violating his restrictions against phone privileges by asking another inmate to call Plaintiff's family on October 14, 2016. According to Plaintiff, the incident report was erroneously dated January 8, 2016. (D.E. 23, p. 4). Lieutenant Guinn participated in this false incident report by serving it on Plaintiff. (D.E. 24-7, p. 2). A review of the incident report reveals that it was dated January 8, 2017, and that the single reference in the report to "January 8, 2016" was inadvertent. (D.E. 24-7, p. 2). On January 10, 2017, Unit Secretary Kyzar and Unit Counselor Morin imposed sanctions against Plaintiff consisting of forty-five days loss phone privileges and 120 days loss of visitation. (D.E. 24-7, p. 2).

In his Supplemental Pleading, Plaintiff states that his actions in having messages relayed to his family are not BOP violations. (D.E. 22, p. 1). Plaintiff cites to a situation involving another inmate named Nerio, who appealed from an incident report where it was determined he had violated BOP rules by having another inmate place a call to a member of Nerio's family. (D.E. 22, p. 6). In connection with inmate Nerio's BP-10 administrative appeal, the Regional Director ruled in favor of inmate Nerio on April 21, 2017 and ordered the incident report to be expunged. (D.E. 22, p. 6).

Plaintiff states in his More Definite Statement that Unit Secretary Kyzar and Counselor Musquiz effectively denied Plaintiff the ability to appeal from two of the incident reports where he was sanctioned for improperly relaying a message through

another inmate to his family.  (D.E. 23, p. 9).  According to Plaintiff, Unit Secretary Kyzar and Counselor Musquiz colluded to prevent Plaintiff from filing timely appeals by improperly withholding his informal BP-8 appeals until the time limitation had expired. (D.E. 23, p. 9).  In March 2017, Plaintiff complained to Assistant Warden Mendoza that prison regulations allow an inmate to resolve all sanctions matters informally.  Assistant Warden Mendoza responded that Plaintiff should have submitted formal BP-9 remedies instead and that he was time barred from filing such formal remedies.

On March 22, 2017, Lieutenant Guinn threatened to place Plaintiff in segregation because Plaintiff had asked Counselor Musquiz for copies of all the incident reports issued.  Lieutenant Guinn's action furthered Plaintiff's belief that Officer Guinn and Lieutenant Guinn were "in cahoots" to violate Plaintiff's rights.

From March 2017 through May 2017, Plaintiff attempted to discuss with Unit Manager Molina the issues of retaliation and the staff's unwillingness to provide copies of all incident reports to Plaintiff.  According to Plaintiff, Unit Manager Molina took no action to assist Plaintiff.

On several occasions between September 2016 and May 2017, Plaintiff approached Case Manager Hubbard, who supervises Unit Manager Molina and the staff under him.  On each occasion, Case Manager Hubbard refused to assist Plaintiff with respects to his complaints about Counselor Musquiz's retaliation and the various incident reports brought against Plaintiff.  Case Manager Hubbard also refused to waive any statute of limitations with regard to appealing from some of the incident reports which Plaintiff believes effectively denied him the ability to have these appeals considered on

the merits.   Lastly, Case Manager Hubbard denied Plaintiff's email requests sent on March 22 and 27, 2017, in which Plaintiff sought copies of all incident reports and appeals.

On January 16, 2017, February 2, 2017, and April 3, 2017, Plaintiff submitted several formal administrative remedies to Warden Hanson, which were received by Executive Assistant Thomas.   In these remedies, Plaintiff complained about staff retaliation and collusion, intimidation by staff members, and the failure to process his informal and formal remedies.   Executive Assistant Thomas refused to intervene to help. With respect to his many of these formal administrative remedies, Warden Hanson did nothing other than state that allegations of staff misconduct are taken seriously and would be forwarded to the appropriate authority for review.   With respect to the formal administrative remedies submitted on April 3, 2017, Warden Hanson denied Plaintiff's request to waive any time limits on submitting formal remedy requests.

As of the date of the *Spears* hearing, Plaintiff's phone privileges were restored. Plaintiff reiterated that he would like his email privileges restored.   Plaintiff alleges that in July 2017, Executive Assistant Thomas called Plaintiff to his office and offered to expunge the incident reports only if Plaintiff would withdraw this lawsuit.   (D.E. 23, p. 13).   Plaintiff apparently did not accept this offer.   Plaintiff clarifies that he seeks the following declaratory and injunctive relief: (1) the expungement of all incident reports and sanctions that are not BOP violations; (2) the expungement of all incident reports and violations issued in retaliation by Counselor Musquiz; (3) an order directing all staff at the FCI-Three Rivers to stop issuing incident reports for relaying a message through

other inmates to his family; and (4) an order finding that Plaintiff was a victim of retaliation and for the staff of FCI-Three Rivers to stop retaliating against Plaintiff. (D.E. 22, pp. 3-4).

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should

not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

Plaintiff original complaint was docketed by the Court as a civil right action under § 1983.  However, he names as Defendants several federal officials working at the FCI-Three Rivers.  In contrast to § 1983 actions brought against state actors, civil rights actions brought against federal actors generally arise under *Bivens v. Six Unknown Names*

*Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  "A *Bivens* action is the counterpart to a § 1983 civil rights action and extends to parties injured by federal actors the protections afforded under § 1983 to parties injured by state actors."  *Grainger v. Federal Bureau of Prisons*, No. C-08-387, 2009 WL 47127, at *2 (S.D. Tex. Jan. 6, 2009) (citing *Carlson v. Green*, 446 U.S. 14, 18 (1980)).  Liberally construed, therefore, Plaintiff's complaint arises under *Bivens*.

## IV.    DISCUSSION

### A.    Eleventh amendment immunity and Official Capacity

A *Bivens* action only provides a remedy for victims of constitutional violations by federal officers in their individual capacities.  *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999).  The United States, federal agencies, and federal employees sued in their official capacities, however, are protected by the doctrine of sovereign immunity from constitutional claims asserted under *Bivens*.  *Gibson v. Federal Bureau of Prisons*, 121 F. App'x 549, 551(5th Cir. 2004) (per curiam) (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001)).  Thus, Plaintiff's *Bivens* claims, to the extent he sues Defendants in their official capacities, are barred. Accordingly, it is respectfully recommended that Plaintiff's claims against Defendants in their official capacities be dismissed with prejudice.

### B.    Due Process Claims

Plaintiff asserts that his various disciplinary convictions for possessing an ice cream cone and improperly relaying messages to his family should be overturned. Liberally construed, Plaintiff claims that his due process rights were violated by the

actions of: (1) Counselor Musquiz, Officer Olivares, and Officer Bustillo in filing false incident reports against Plaintiff; (2) Lieutenant Guinn in serving these incident reports on Plaintiff; and (3) Case Manager Swiatek, Unit Secretary Kyzar, and Unit Counselor Morin in imposing illegal sanctions on Plaintiff.

The Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). "It is well-settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted . . . .'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck*, 512 U.S. at 486-87). The *Heck* doctrine also operates to bar prisoners from seeking injunctive relief or otherwise challenging the punishment imposed by a disciplinary proceeding through a § 1983 action. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[plaintiff's] claim for declaratory relief and money damages, based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); *Clarke v. Stalder*, 154 F.3d 186, 189-91 (5th Cir. 1998) (en banc) (applying *Heck* to bar plaintiff's constitutional claims for injunctive relief that were fundamentally intertwined with his request for restoration of good-time credits).

Plaintiff's pleadings and testimony at the *Spears* hearing reflect that he received sanctions in connection with: (1) an August 23, 2016 disciplinary conviction for using

another inmate's pin number to place a phone call to Plaintiff's family; (2) a September 21, 2016 disciplinary conviction for improperly possessing an ice cream cup in violation of the commissary restrictions previously imposed; (3) a September 22, 2016 disciplinary conviction for improperly using the email system in violation of email restrictions previously imposed; and (4) disciplinary convictions on November 17, 2016, December 30, 2016, and January 8, 2017 for relaying messages through other inmates to his family.

In his Supplemental Pleading, Plaintiff states that his actions of having messages relayed to his family are not BOP violations and that another inmate successfully had a similar disciplinary conviction overturned on April 21, 2017.   (D.E. 22, pp. 1, 6). Plaintiff further states that there is no disciplinary code violation for giving things of value or for restricting an individual to possess or eat ice cream.  (D.E. 22, p. 2).  While arguing that his disciplinary convictions are invalid, Plaintiff's pleadings reflect that none of the disciplinary convictions for which he was sanctioned have been overturned on appeal or set aside in a habeas corpus proceeding.  Because Plaintiff has not successfully had any of these disciplinary decisions set aside, he cannot seek any relief in this case.

In addition, Plaintiff fails to state a due process claim against Counselor Musquiz to the extent he challenges the three or four incident reports that were brought by Counselor Musquiz between August 23, 2016 and September 20, 2016.  The Supreme Court has held that due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incident of prison life, or to those that extend the length or duration of confinement.  *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995).  In other words, "[p]risoners charged with institutional rules violations are

entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest." *Hall v. Thaler*, No. H-07-0763, 2010 WL 883730, \*6 (S.D. Tex. Mar. 11, 2010). Because Plaintiff received no punishment in connection with the dismissed charges, any claim attacking the incident reports submitted between August 23, 2016 and September 20, 2016, fails to assert a protected liberty interest.

Accordingly, it is respectfully recommended that Plaintiff's due process claims against Defendants Musquiz, Olivares, Bustillo, Guinn, Swiatek, Kyzar, and Morin be dismissed for failure to state a claim and/or as frivolous.

### C.    Grievance Process

Plaintiff claims that prison officials at the FCI-Three Rivers have been either unresponsive to his formal and informal grievances or have acted in ways to hinder Plaintiff's ability to file grievances in a timely fashion.   Specifically, Plaintiff alleges that: (1) on September 22 and 23, 2017, Plaintiff submitted two informal requests for administrative remedies complaining about retaliation by the Karnes B Unit staff but that Executive Assistant Thomas and Warden Hanson failed to respond or otherwise provide any relief to Plaintiff; (2) Unit Secretary Kyzar and Counselor Musquiz colluded to prevent Plaintiff from filing timely appeals of two incident reports by improperly withholding his informal BP-8 appeals until the time limitation had expired; (3) Assistant Warden Mendoza informed Plaintiff that Plaintiff should have submitted formal BP-9 remedies instead and that he was time barred from filing such formal remedies; (4) Case Manager Hubbard refused to waive any statute of limitations with regard to

appealing from some of the incident reports; and (5) Warden Hanson and Executive Assistant Thomas either failed to respond in a helpful manner or denied Plaintiff's formal administrative remedies submitted on January 16, 2017, February 2, 2017, and April 3, 2017.

The undersigned construes Plaintiff's allegations as challenging the administrative grievance system, including the failure by prison officials to process his administrative grievances and resolve the issues contained therein in Plaintiff's favor.   Plaintiff's allegations, however, fail to state a cognizable constitutional claim.   *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir.  2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).   The infirmities cited by Plaintiff with regard to the administrative grievance process, therefore, fail to state a constitutional claim against any FCI-Three Rivers' prison official.   Accordingly, it is respectfully recommended that these claims against Defendants Thomas, Hanson, Mendoza, Kyzar, Musquiz, and Hubbard be dismissed for failure to state a claim and/or as frivolous.

### D.    Retaliation

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'"  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).  "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  *Morris*, 449 F.3d at 686.

To state a valid § 1983 or *Bivens* claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)).  An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).  "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim."  *Jones*, 188 F.3d at 325.  The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.*  In other words, a successful claim of retaliation requires a showing that, but for some

retaliatory motive, the complained of adverse incident would not have occurred.  *Woods*, 60 F.3d at 1166.

Courts nevertheless recognize that some acts, even though they are motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights.  *Morris*, 449 F.3d at 684.  Such acts, therefore, do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.  *Id.*

### *(1)  Counselor Musquiz, Officer Olivares, and Officer Bustillo*

Plaintiff primarily claims that Counselor Musquiz began a campaign of retaliatory conduct against Plaintiff after Plaintiff sought to appeal from sanctions imposed in connection with a disciplinary incident report filed by Counselor Musquiz on August 23, 2016.  After learning Plaintiff had exercised his right to file administrative appeal, Plaintiff alleges Counselor Musquiz threatened Plaintiff with "coercive action" and soon thereafter filed three or four incident reports against Plaintiff between August 23, 2016 and September 20, 2016.  Each of these incident reports were dismissed without Plaintiff receiving any punishment or other adverse action.

The filing and dismissal of these disciplinary cases in the aftermath of his threat to take coercive action against Plaintiff suggests Counselor Musquiz may have been acting with a retaliatory motive.  *See Rivera v. Salazar*, No. C-04-552, 2007 WL 1791675, at *5 (S.D. Tex. Jun. 19, 2007) ("The fact that the disciplinary case was dismissed may be *some evidence* that the case was retaliatory").  Plaintiff's allegations further indicate that, but for Counselor Musquiz's retaliatory motive, he may not have been subjected to frivolous disciplinary cases that were summarily dismissed.

Nevertheless, while Counselor Musquiz's actions may have been motivated by a retaliatory intent in filing the three or four disciplinary incident reports between August 23 and September 20, 2016, Plaintiff fails to state a retaliation claim against him. Counselor Musquiz's conduct in filing these disciplinary incident reports that were dismissed does not constitute a sufficient "retaliatory adverse act," as it resulted in no injury to Plaintiff, much less a *de minimis* injury. *See Gonzales v. Currie*, No. 2:13-CV-201, 2014 WL 222353, at *15 (S.D. Tex. Jan. 21, 2014) (explaining that the act "of filing a minor disciplinary case against plaintiff resulting in plaintiff's 5-day loss of recreation and a verbal reprimand is no more than *de minimis*"); *Hall*, 2010 WL 883730, at *7 (holding that the dismissal of inmate's disciplinary case, where the only consequence was a brief placement in segregation before the hearing, was "not a sufficiently adverse act to support a retaliation claim under § 1983"); *Ford v. Jones*, No. G-02-626, 2006 WL 3488954, at *2 (S.D. Tex. Dec. 1, 2006) (holding that the denial of recreation on one occasion is a *de minimis* injury and does not constitute an "adverse retaliatory act" for purposes of stating a retaliation claim). Furthermore, it is clear from reviewing Plaintiff's pleadings that Counselor Musquiz's conduct did not deter Plaintiff from filing grievances, filing this lawsuit, or otherwise attempting to exert his constitutional rights.

Plaintiff further alleges that Counselor Musquiz continued to file false incident reports against Plaintiff on September 20, 2016 (possessing an ice cream cup) and December 19, 2016 (improperly relaying a message through another inmate to his family) in retaliation for Plaintiff appealing his sanctions received in connection with prior incident reports. In contrast to the previous disciplinary incident reports that were

dismissed without sanctions, both the September 20, 2016 and December 19, 2016 incident reports resulted in disciplinary convictions and sanctions imposed.

Despite claiming that the charges in these cases are not BOP violations, Plaintiff's allegations reflect that he committed the underlying conduct in possessing the ice cream cup and relaying a message to his family through other inmates. Plaintiff further provides no allegations to indicate that sanctions imposed against him have been overturned on appeal or otherwise reversed. Thus, even when accepting Plaintiff's allegations as true, his retaliation claims against Counselor Musquiz as to the September 20, 2016 and December 19, 2016 incident reports are unsustainable because Counselor Musquiz's conduct in filing these reports cannot be attributable solely to a retaliatory motive.

Lastly, Plaintiff alleges that Counselor Musquiz directed or otherwise conspired with Officers Olivares and Bustillo to bring false incident reports against Plaintiff on September 21, 2016 (violating restrictions imposed as to loss of email privileges) and January 8, 2017 (improperly relaying a message though another inmate to his family). Plaintiff's allegations of a conspiracy between these defendants to retaliate against Plaintiff by filing false incident reports, however, are speculative at best and otherwise conclusory. Plaintiff alleges no specific facts to indicate that Officers Olivares and Bustillo agreed to participate in a campaign of retaliatory conduct against Plaintiff. Furthermore, each of the incident reports filed by Officers Olivares and Bustillo resulted in disciplinary convictions on the charges brought and sanctions imposed. Even when accepting Plaintiff's allegations as true, his retaliation claims against Counselor Musquiz,

Officers Olivares, and Officer Bustillo are unsustainable because their conduct cannot be attributable solely to a retaliatory motive.

Accordingly, it is respectfully recommended that Plaintiff's retaliation claims against Defendants Musquiz, Olivares, and Bustillo be dismissed for failure to state a claim and/or as frivolous.

### (2) Lieutenant Guinn

Plaintiff alleges that on March 22, 2017, Lieutenant Guinn threatened to place Plaintiff in segregation in response to Plaintiff's request to Counselor Musquiz for copies of all the incident reports issued.  Plaintiff's conclusory allegations fail to indicate that he sought to exercise a constitutional right with regard to his request for copies of incident reports.  Furthermore, Lieutenant Guinn's alleged threat to place Plaintiff in segregation is not considered a sufficiently adverse retaliatory act.  *See Jenkins v. Livingston*, No. 6:09cv413, 2009 WL 4727722, at *3 (E.D. Tex. Dec. 2, 2009) (explaining that "verbal threats and name calling are not sufficient to state a claim of retaliation"); *Carter v. Curry*, No. 9:07cv57, 2007 WL 3036425, *5 (E.D. Tex. Oct. 17, 2007) (concluding that "discussion of threats in the context of a retaliation claim does not rise to the level of an actionable retaliation claim due to the lack of a sufficiently retaliatory act"). Accordingly, it is respectfully recommended that Plaintiff's retaliation claim against Lieutenant Guinn be dismissed for failure to state a claim and/or as frivolous.

### (3) Supervisory Officials

Plaintiff claims that several supervisory officials at FCI-Three Rivers failed to remedy Plaintiff's complaints about retaliatory conduct through the filing of false

incident reports against Plaintiff by Counselor Musquiz and other officers.  Specifically, Plaintiff alleges that: (1) he complained to Warden Hanson about the "ice cream" incident report and that Warden Hanson told Plaintiff to file the appropriate appeals; (2) on September 22, 2017, Plaintiff discussed the "frivolous ice cream and email incident reports" with Unit Manager Molina who failed to address the issues, informed Plaintiff to appeal the incident report, and then did not respond to Plaintiff's informal administrative remedies; (3) on November 6, 2017, Plaintiff spoke with Warden Hanson about Counselor Musquiz's misconduct and that Warden Hanson walked away after responding that he did not receive a complaint from Plaintiff; (4) on January 6, 2017, Plaintiff again spoke with Unit Manager Molina about the December 19, 2016 incident report and the retaliatory acts committed by Officer Musquiz and other officers but was informed by Unit Manager Molina that Officer Musquiz was doing his job; (5) from March through May 2017, Unit Manager Molina took no action after Plaintiff discussed with him the issues of retaliation and the staff's unwillingness to provide copies of all incident reports to Plaintiff; and (6) on several occasions between September 2016 and May 2017, Plaintiff approached Case Manager Hubbard, who refused to assist Plaintiff with respect to his complaints about Officer Musquiz's retaliation and the various incident reports brought against Plaintiff.

It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates.  *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or

*respondeat superior* liability of supervisors under section 1983. *Thompkins,* 828 F.2d at 303-04. *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

In this case, Plaintiff's allegations against the supervisory officials suggest only that they had knowledge of the misconduct allegedly committed by their subordinates in purportedly retaliating against Plaintiff by filing false incident reports against him. Other than his conclusory speculation that all named defendants were in "cahoots," Plaintiff alleges no specific facts to indicate that Defendants Hanson, Molina, and Hubbard, in their roles as supervisory officials, either were complicit or otherwise approved of the alleged retaliatory actions taken against Plaintiff. Furthermore, to the extent that Plaintiff complains that these supervisory officials failed to investigate Plaintiff's grievances and provide any remedy, such allegations fail to state a constitutional violation. *See Geiger*, 404 F.3d at 374. Accordingly, it is respectfully recommended that Plaintiff's claims against Defendants Hanson, Molina, and Hubbard in their supervisory capacities be dismissed for failure to state a claim and/or as frivolous.

### E.      Plaintiff's Motions for TRO or Injunction

Plaintiff has filed two identical motions for a TRO or preliminary injunction. (D.E. 6, 12).  Plaintiff first asserts that Defendant failed to properly provide him with: (1) the necessary form for payment of a $5.00 fee to this Court; and (2) a certified copy of his trust fund account statement which was needed by the Court to determine whether he was entitled to IFP status.   The Court subsequently received the trust fund account statement.  (D.E. 15).  Plaintiff has been granted leave to proceed *in forma pauperis* and ordered to submit an initial filing fee of $160.66.   To the extent Plaintiff seeks any preliminary injunctive relief as to payment of $5.00 and the submission of the trust fund account statement, such request has been rendered moot.

Plaintiff next asserts he is forced to ask prison officials for copies of all incident reports, sanctions, appeals, and final dispositions.   According to Plaintiff, Counselor Musquiz has withheld these necessary documents related to his various disciplinary proceedings.  With regard to his appeals challenging the disciplinary reports and resulting sanctions, Plaintiff contends that he has not been receiving any responses due to actions taken by Counselor Musquiz and his co-workers to discard the appeals.

Plaintiff seeks a Court order: (1) requiring the Warden of FCI-Three Rivers to move Plaintiff from his current housing unit, the Karnes B housing unit, to another housing unit in the FCI-Three Rivers; (2) staying all pending or finalized incident reports or sanctions issued by Counselor Musquiz or the Karnes B unit team pending the outcome of these proceedings; and (3) providing Plaintiff with a copy of all previous

incident reports issued, any sanctions given, appeals submitted, and responses to those appeals.

In order to obtain a TRO or preliminary injunctive relief under Federal Rule of Civil Procedure 65(a), the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013). Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted). Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

As discussed above, each of Plaintiff's claims asserted in his various pleadings are subject to dismissal for failure to state a claim. Because Plaintiff cannot demonstrate a likelihood of success on the merits of his lawsuit, he is not entitled to any preliminary injunctive relief. Accordingly, it is respectfully recommended that Plaintiff's Motion for TRO or Injunction (D.E. 6, 12) be denied.

## V.    CONCLUSION

For purposes of § 1915A, it is respectfully recommended that: (1) Plaintiff's claims against all Defendants in their official capacities be **DISMISSED** as barred by the

Eleventh Amendment; (2) Plaintiff's claims against all Defendants in their individual capacities be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1); (3) Plaintiff's Motions for TRO or Injunction (D.E. 6, 12) be **DENIED**; (4) the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g); and (5) the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the "Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov."

Respectfully submitted this 7th day of September, 2017.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).